**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

―――――――――――――――――――――― X
                                                   :
SAVE OUR ALLIES, LLC,                              :
                                                   :   Civil Action No: ____
                              Plaintiff,           :
                                                   :
v.                                                 :   **JURY TRIAL DEMANDED**
                                                   :
GREGORY GUSTIN, THE RAVENSWOOD                     :
GROUP HOLDING LLC, SHAHZADA                        :   _____, 2022
KHURRAM, SAMA GLOBAL INVESTMENT                    :
LTD, CITY GATE TRADING AND                         :
CONTRACTING CO., and MATTHEW NELSON,               :
                                                   :
                                                   :
                              Defendants.          :
―――――――――――――――――――――― X

**COMPLAINT**

Plaintiff Save Our Allies LLC ("Plaintiff" or "Save Our Allies") complains and alleges as follows.

**INTRODUCTION**

1. Founded as an Internal Revenue Code Section 501(c)(3) charity by U.S. military veterans and their family members, Save Our Allies helped Afghan citizens who had assisted the United States escape the Taliban when it seized control of Afghanistan. While Save Our Allies succeeded in rescuing approximately 12,000 Afghan refugees, Save Our Allies was unable to save another 197 of them. This is substantially because Defendants Gregory Gustin ("Gustin"), the Ravenswood Group Holding LLC ("Ravenswood"), Shahzada Khurram ("Khurram"), SAMA Global Investment Ltd. ("SAMA"), and City Gate Trading and Contracting Co. ("City Gate")

defrauded Save Our Allies of $735,128 that the charity paid for transportation, housing, medical and other services these refugees desperately needed—services that Defendants never delivered.

2. These 197 refugees included holders of and applicants for Special Immigrant Visas, which are granted only to those who worked with the U.S. Armed Forces or under Chief of Mission authority in Iraq or Afghanistan for a period of at least 12 months and have favorable written recommendations from a General or Flag Officer in the U.S. Armed Forces or from the Chief of Mission. As such, these individuals were especially vulnerable to violent abuse by the Taliban, including ethnic Hazaras, a persecuted minority in Afghanistan; widows who did not wish to be forcibly remarried; and educated female professionals. While Defendants bragged of their "significant relations with various governmental entities" in Qatar and accepted six wire transfers totaling $590,000 from Save Our Allies, they provided no services whatsoever while these refugees languished. Tragically, one young Afghan refugee girl died of cancer while waiting for a medical evacuation and forgoing other travel alternatives, because Defendants repeatedly (falsely) promised for several weeks that her flight would depart the very next day. Save Our Allies paid an additional $145,128 to third parties to help feed and house the 197 Afghan refugees after Defendants' false promises.

3. Defendants falsely claimed expenses in the tens of millions of dollars, and to be out of funds, while urgently demanding more cash from Save Our Allies "to get the lady to sing." In a classic scam, Defendants claimed that "the planes are prepared to fetch" the refugees, *if only* Save Our Allies and others wired them more money immediately.

4. Defendants never had any capability or intent to assist the refugees' escape from Afghanistan.

## JURISDICTION

A. **Subject Matter Jurisdiction**

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff, a not-for-profit organization headquartered in the State of North Carolina and incorporated in the Commonwealth of Virginia; Defendants Gustin and Ravenswood, natural and corporate persons resident in Florida; Defendant Khurram, a citizen of Pakistan who resides in Qatar and the United Arab Emirates; Defendants SAMA and City Gate are businesses located in Qatar; and Defendant Nelson resides in Florida and the amount in controversy exceeds $75,000 excluding costs.

B. **Personal Jurisdiction**

6. The Court may exercise personal jurisdiction over Defendants Gustin, Nelson and Ravenswood because they reside in this district. The Court may also exercise personal jurisdiction over Defendants Khurram, SAMA, and City Gate for two reasons. First, these Defendants participated in a joint venture with Ravenswood, which is resident in this district. Second, these Defendants' intentional actions to fraudulently obtain funds from Plaintiff through Defendants Gustin and Ravenswood were aimed expressly at the State of Florida, where Save Our Allies conducts a significant amount of its charitable activities. Defendants Khurram, SAMA and City Gate knew that Plaintiff would suffer harm in Florida, such that these Defendants could reasonably anticipate being hauled into court in this state to answer for their misconduct.

## VENUE

7. Venue is proper under 28 U.S.C. §1391(b)(3), pursuant to this Court's personal jurisdiction over all Defendants.

## FACTUAL ALLEGATIONS

8. The details of Defendants' fraud on Save Our Allies follow.

A.  **The United States' entry and withdrawal from Afghanistan**

9. On September 11, 2001, al-Qaeda terrorists harbored by the Taliban in Afghanistan attacked targets in the United States, resulting in the deaths of 2,977 individuals in New York, Pennsylvania and Virginia. In response, on October 7, 2001, the United States and its Coalition allies launched an operation to capture or kill al-Qaeda's leaders, and to topple the Taliban regime. Over the ensuing twenty years, U.S.-led military operations ENDURING FREEDOM and FREEDOM'S SENTINEL resulted in the deaths of 2,461 American servicemembers, 1,144 Coalition servicemembers, 47,245 Afghan civilians, approximately 66,000 Afghan security forces members, and an unknown (but very large) number of Afghans serving as contractors for Coalition allies.

10. On February 29, 2020, the United States and the Taliban signed an "Agreement for Bringing Peace to Afghanistan" that provided for withdrawal of Coalition forces by May 1, 2021. On April 4, 2021, the United States announced that all American forces would be withdrawn by September 11th of that year. Soon after, the Taliban launched an offensive, and the Afghan government swiftly began to collapse. On August 14, 2021, the United States began evacuating what would eventually be a total of approximately 123,000 Afghans. On August 15, 2021, the Taliban seized the Afghan capital Kabul. On August 30, 2021, the final American servicemember departed Afghanistan, leaving behind several hundred U.S. citizens and 78,000 Afghan allies and their family members (including the majority of 18,000 Special Immigrant Visa holders) to face violent retribution from the Taliban.

B.  **Save Our Allies**

11. In response to the humanitarian crisis in Afghanistan in the summer of 2021, Save Our Allies was founded by U.S. military veterans and their family members as a charity, under Internal Revenue Code Section 501(c)(3), to rescue Afghan allies who remained trapped in

Afghanistan following the U.S. military withdrawal. In August 2021, Save Our Allies successfully exfiltrated its first refugee, an interpreter for U.S. forces; in the following ten days, Save Our Allies helped approximately 12,000 deserving Afghans escape the Taliban's clutches. Working with the U.S. Departments of Defense and State, Save Our Allies leveraged its access to aircraft in Afghanistan, even after the American withdrawal, to evacuate refugees to safety in the United Arab Emirates.

C.     **The Defendants**

12.    Gregory Gustin is an American veteran and businessman employed as the CEO and President of Ravenswood. Ravenswood purports to be a consultancy and is publicly identified as a joint venture partner of SAMA. (*See* Exh. A.) SAMA, purportedly an investment fund, employs Khurram as its executive finance officer. Khurram also acts as the Managing Director of Ravenswood. SAMA describes City Gate as a partner. City Gate appears to be based in Qatar. Matthew Nelson is a former board member of Save Our Allies.

D.     **Defendants' Fraudulent Scheme**

13.    Several not-for-profit organizations and private individuals sought to help different groups of refugees in the confusing and disorienting wake of the abrupt American withdrawal from Afghanistan. After the United Arab Emirates and other countries accepted as many Afghan refugees as they could, resettlement options became more limited.

14.    In early 2022, Nelson consolidated 197 Afghan refugees into a discrete group. Nelson approached Save Our Allies and stated that he could safely evacuate them from Afghanistan (through Pakistan) to Qatar—if only Save Our Allies provided him with funding and assistance. Save Our Allies provided Nelson with the requested funds and added him to the board of directors. Nelson then introduced Save Our Allies to Gustin and Khurram.

5

15. Gustin repeatedly told Save Our Allies that he maintained a special relationship with Qatar, including personally with Sheikh Tamim bin Hamad Al Thani – who leads that nation and that, because of this relationship and Khurram's background as a Pakistani-born owner of a business in Qatar, Defendants possessed the unique ability to obtain long-term Qatar visas for Afghan refugees. Upon information and belief, Gustin and Khurram made similar representations to several other charitable groups active in helping Afghan refugees.

16. On January 10, 2022, Save Our Allies, Ravenswood and SAMA agreed that SAMA would use its "significant relations with various governmental entities" and subcontractors including Ravenswood to help Save Our Allies obtain ground and air transportation from Pakistan to Qatar, and housing, employment, and other services in Qatar for Afghan refugees, in return for reimbursement of costs not to exceed $750,000. (Exh. B.) Nelson signed this contract on behalf of the Save Our Allies, and Khurram signed on behalf of SAMA.

17. On January 15, 2022, SAMA invoiced Save Our Allies $1,852,500 for air transport, housing, medical health policies, training certifications, and unspecified support items for at least 170 Afghan refugees. (Exh. C.)

18. SAMA represented to Save Our Allies that the final price for SAMA's services was to be adjusted per mutual agreement, that approximately $1,150,000 would be subsidized by Ravenswood, and that delivery of its services would be provided within seven days of Save Our Allies' final payment, reflecting the obvious point that time was of the essence in the provision of payment.

19. SAMA's invoice provided that SAMA was to receive payments of $150,000 on January 15, 2022, with $100,000 due on January 22, 2022, further payments of a minimum of

$180,000 and $100,000 due on January 27, 2022, and the remaining balance due as soon as practicable thereafter. *See id*.

20. Save Our Allies paid SAMA, Khurram, City Gate and Ravenswood as follows:

Wire 410878, January 18, 2022, $50,000 to City Gate;

Wire 411343, January 19, 2022, $100,000 to City Gate;

Wire 411678, January 20, 2002, $100,000 to Khurram;

Wire 414526, January 28, 2022, $90,000 to Ravenswood;

Wire 414748, January 28, 2022, $100,000 to Ravenswood;

Wire 416756, February 3, 2022, $100,000 to Ravenswood; and

Wire 419167, February 14, 2022, $50,000 to City Gate.

(*See* Exh. D.) The money Save Our Allies paid to City Gate was to be for refugee housing; the money paid to Khurram and Ravenswood was for flights. Money was paid directly to Ravenswood after Gustin told Save Our Allies that he could move money overseas more quickly to Khurram.

21. Save Our Allies' payments to Defendants totaled $590,000 and were made by February 14, 2022. SAMA and Ravenswood were required to provide the services set forth in Exhibit B by February 21, 2022, at the latest.

22. Instead, by letter dated February 25, 2022, Gustin stated for the first time that "the 'costs' for what we are providing exceeds [sic] $10M per planeload." (Exh. E.)

23. Gustin's letter to Save Our Allies (and likely others) continues to state that Ravenswood is:

> [O]ut of cash – and it is cash that is needed to get the lady to sing. Don't worry, she will sing, (soon) but we need more help as fast as possible. Each of you have promised more funds after success. OK – success is fly and land – but as you can see, we have accomplished so much and the planes are prepared to fetch the [passengers].

*Id*.

7

24. In January 2022, Defendants represented to Save Our Allies that the 197 refugees would be flown to Qatar in early February 2022. By mid-March 2022, despite Defendants' near-daily assurances of progress purportedly made and anticipated success "the next day" – and no refugees having yet arrived in Qatar – employees of Save Our Allies flew to Pakistan. There, they found the refugees ill-housed and without visas. SAMA and Ravenswood provided no relocation services whatsoever to Save Our Allies or any of the refugees identified for evacuation, despite their contractual commitments and having induced Save Our Allies to pay $590,000. The refugees never reached Qatar. In the end of February and March 2022, Save Our Allies paid an additional $145,128 to third parties to help feed and house the 197 Afghan refugees in Pakistan that Defendants had left completely without services.

25. SAMA and Ravenswood knowingly lacked the capability to assist, and never intended to assist, the Afghan refugees' relocation to Qatar. Save Our Allies' board member at that time, Nelson, knew, or should have known, that SAMA and Ravenswood lacked the capability or intent to assist the refugees.

26. One of the Afghan refugees Save Our Allies sought to evacuate was Mahdesa Alu Khel, a twelve-year-old girl with leukemia who could not be treated in Afghanistan or Pakistan. Save Our Allies relied on Defendants' repeated promises to move her to Qatar, rather than seek available oncological care elsewhere. Ravenswood and SAMA continued to promise to transport Mahdesa "the next day" until she died on March 10, 2022.

27. On or about March 28, 2022, Save Our Allies wrote to Defendants in an effort to recover the $590,000 remitted to them. Defendants never responded.

28. On August 16, 2022, Save Our Allies sent to Defendants a written demand pursuant to Florida Statute § 772.11 (Exh. F). On August 17, Defendant Gustin replied by email, copying

Defendant Khurram, that he received the demand letter and requested a "face-to-face" meeting. *Id*. On August 19, Defendant Nelson responded with an email containing no text to an email requesting that he confirm receipt of the demand letter. *Id*. No Defendant replied to August 22 and September 1 emails seeking to follow-up on Defendant Gustin's offer to meet.

## CAUSES OF ACTION

### Count One: Fraud

**(Against Defendants Gustin, Ravenswood, Khurram, SAMA and City Gate)**

29. Plaintiff incorporates its allegations in each of the preceding paragraphs as if fully set forth herein.

30. Under Florida law, the elements of fraud are a false material misstatement, knowingly made, intended to induce another to act on it, justifiable reliance on the misstatement, and damages resulting from reliance on the misstatement.

31. As part of their scheme to defraud, Defendants falsely represented that they would provide certain services including air transport, housing, medical health policies, training certifications, and unspecified other support items, for 197 Afghan refugees. Defendants knew at the time that they were incapable of and did not intend to provide these services. To execute their fraudulent scheme, Defendants then solicited and induced Save Our Allies to provide domestic and international wire transfers between January 18 and February 14, 2022—totaling $590,000— for these services. Save Our Allies reasonably relied on Defendants' assurances that they intended to provide these services. Defendants provided no services to Save Our Allies or the Afghan refugees Save Our Allies sought to assist. Plaintiff then paid third parties an additional $145,128 for services that Defendants had failed to provide.

9

## Count Two: Civil conspiracy

**(Against Defendants Gustin, Ravenswood, Khurram, SAMA and City Gate)**

32. Plaintiff incorporates its allegations in each of the preceding paragraphs as if fully set forth herein.

33. Under Florida law, the elements of a civil conspiracy are an agreement between parties to do an unlawful act, the commission of an overt act in furtherance of the conspiracy, and damages resulting from that act.

34. Defendants together agreed to defraud Save our Allies by falsely representing that they would provide services that they were incapable of providing and did not intend to provide to Save Our Allies and the refugees. Defendants then solicited and induced Save Our Allies to provide wire transfers from Save Our Allies between January 18 and February 14, 2022—totaling $590,000—for these services. Save Our Allies lost $590,000 in charitable funds, and the Afghan refugees neither received the services nor reached safety in Qatar. Plaintiff then paid third parties an additional $145,128 for services that Defendants had failed to provide.

## Count Three: Conversion

**(Against Defendants Gustin, Ravenswood, Khurram, SAMA and City Gate)**

35. Plaintiff incorporates its allegations in each of the preceding paragraphs as if fully set forth herein.

36. Under Florida law, the elements of conversion are a person's wrongful act of dominion asserted over another's property, inconsistent with the latter's ownership interest therein.

37. Defendants' receipt of $590,000 in charitable funds, sent in consideration for services Save Our Allies and the Afghan refugees never received, and subsequent refusal to return the funds to Plaintiff was inconsistent with Plaintiff's ownership interest in those funds. Plaintiff then paid third parties an additional $145,128 for services that Defendants had failed to provide.

### Count Four: Civil Theft

**(Against Defendants Gustin, Ravenswood, Khurram, SAMA and City Gate)**

38. Plaintiff incorporates its allegations in each of the preceding paragraphs as if fully set forth herein.

39. Under section 772.11 of Florida's Statutes, civil theft is established where there the statutory requirements for criminal theft are met and there is criminal intent.

40. Defendants' receipt of $590,000 in charitable funds, sent by Save Our Allies in consideration for services they and the Afghan refugees never received, was inconsistent with Plaintiff's ownership interest in those funds, and done with the criminal intent of defrauding Save Our Allies. Plaintiff then paid third parties an additional $145,128 for services that Defendants had failed to provide.

### Count Five: Breach of Contract

**(Against Defendants Gustin, Ravenswood, Khurram, SAMA and City Gate)**

41. Plaintiff incorporates its allegations in each of the preceding paragraphs as if fully set forth herein.

42. Under Florida law, the elements of breach of contract are a valid contract, a material breach, and damages resulting from that breach.

43. Save Our Allies and Defendants executed a valid written contract, a copy of which is attached as Exhibit B. Defendants failed to provide any of the promised services, despite being paid $590,000. Save Our Allies lost $590,000 in charitable funds, and the Afghan refugees neither received the services nor reached safety in Qatar. Plaintiff then paid third parties an additional $145,128 for services that Defendants had failed to provide.

### Count Six:  Unjust Enrichment

### (Against Defendants Gustin, Ravenswood, Khurram, SAMA and City Gate)

44. Plaintiff incorporates its allegations in each of the preceding paragraphs as if fully set forth herein.

45. Under Florida law, the elements of unjust enrichment are a benefit conferred and accepted under circumstances where it would be inequitable to retain that benefit without first paying the value of that benefit.

46. Save Our Allies conferred a benefit on Defendants when it paid Defendants $590,000.  Defendants accepted the payment but failed to provide any services for the benefit conferred.

### Count Seven:  Breach of Fiduciary Duty

### (Against Defendant Nelson)

47. Plaintiff incorporates its allegations in each of the preceding paragraphs as if fully set forth herein.

48. Under Florida law, the elements of a breach of fiduciary duty are the existence of a duty, breach of that duty, and damages flowing as a proximate cause from that breach.

49. Nelson was a board member of Save Our Allies and owed fiduciary duties of loyalty and care to Save Our Allies, its members, and the Afghan refugees it seeks to aid.

50. Nelson breached that duty to Save Our Allies when he executed a contract on behalf of Save Our Allies with SAMA and Ravenswood despite their lack of capability or intent to assist the Afghan refugees.  Had Nelson taken due care, he would have known that SAMA and Ravenswood could not or would not help the refugees.

51. Nelson's breach of his duties of loyalty and care to Save Our Allies is the proximate cause of Save Our Allies' loss of $590,000 and the refugees' failure to receive needed services.

Plaintiff then paid third parties an additional $145,128 for services that Defendants had failed to provide.

## JURY DEMAND

52. Per Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests:

a. Compensatory damages for injuries suffered by Plaintiff, in an amount to be determined at trial, but not less than $735,128;

b. Treble damages for injuries suffered by Plaintiff, in an amount to be determined at trial, but not less than an additional $2,205,384;

c. Exemplary and punitive damages for injuries suffered by Plaintiff, in an amount to be determined at trial;

d. Pre-judgment and post-judgment interest;

e. Reasonable attorneys' fees; and

f. Such other and further relief as the Court deems just and equitable.

By: /s/
Sean M. Reilly
Florida Bar No. 0613991
Kevin T. Carroll (*pro hac vice*)
Hughes Hubbard & Reed LLP
1775 I Street, NW
Washington, DC 20006
sean.reilly@hugheshubbard.com
kevin.carroll@hugheshubbard.com
Phone: 202-721-4600
Facsimile: 202-721-4646

*Attorneys for Plaintiff Save Our Allies*