**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:22-cv-22981-JEM/Becerra

SAVE OUR ALLIES, LLC,

      Plaintiff,

v.

GREGORY GUSTIN, *et al.*,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** came before the Court on Plaintiff Save Our Allies, LLC's ("Plaintiff") Motion for Default Final Judgment Against Defendant The Ravenswood Group Holding LLC (the "Motion"). ECF No. [18]. In support of the Motion, Plaintiff filed the Declaration of Nick Palmisciano, a member of Plaintiff's Board of Directors. ECF No. [18-1]. Ravenswood did not file a response to the Motion and the time to do so has passed. Upon due consideration of Plaintiff's Motion and supporting declaration, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that the Motion be **GRANTED IN PART AND DENIED IN PART** as follows.

**I.    BACKGROUND**

Plaintiff Save Our Allies, LLC is a charity founded by U.S. military veterans and their families. ECF No. [1] ¶ 1. The aim of the organization was to aid certain Afghan citizens in escaping Afghanistan after the U.S. military withdrawal in August of 2021, and safely relocate

---

[1] This Matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [24].

them to the United Arab Emirates. *Id.* ¶¶ 1, 10–11. Plaintiff alleges that it succeeded in its mission as to approximately 12,000 Afghan refugees but was unable to aid an additional 197 refugees due to the actions of Defendants. *Id.* ¶ 1.

Defendant The Ravenswood Holding Group LLC ("Ravenswood") is a limited liability company that holds itself out as a consultancy. *Id.* ¶ 12. Defendant Gregory Gustin ("Gustin") is the CEO and President of Ravenswood, and Defendant Shahzada Khurram ("Khurram") is the Managing Director of Ravenswood. *Id.* Defendant Sama Global Investment Co. ("SAMA") is a company that holds itself out as an investment fund, and a joint venture partner of Ravenswood. *Id.* Defendant Khurram also serves as the "executive finance officer" of SAMA. *Id.* Defendant City Gate Trading and Contracting Co. ("City Gate") is a "partner" company of SAMA. *Id.* Finally, Defendant Matthew Nelson ("Nelson") is a former board member of Plaintiff. *Id.*

According to the Complaint, in early 2022, Defendant Nelson approached Plaintiff and stated he could safely relocate a group of 197 refugees from Afghanistan to Qatar if Plaintiff provided him with funding and assistance. *Id.* at ¶ 14. Plaintiff agreed, provided Nelson with the requested funds, and added Nelson to its board of directors. *Id.* Nelson then introduced Plaintiff to Defendants Gustin and Khurram to facilitate the effort. *Id.*

Defendants Gustin and Khurram, as representatives of Defendants Ravenswood and SAMA, represented to Plaintiff that they maintained a "special relationship with Qatar" such that they could also assist in the relocation process. *Id.* ¶¶ 15–16. On January 10, 2022, Plaintiff entered into an agreement with Defendants Ravenswood and SAMA, wherein Ravenswood and SAMA would use their connections with Qatar to obtain ground and air transportation for the Afghan refugees, and procure housing, employment, and other services in Qatar, in exchange for Plaintiff's reimbursement of costs not to exceed $750,000.00. *Id.* ¶ 16. Plaintiff and SAMA

executed a written contract to that effect, with Defendant Nelson signing the contract on behalf of Plaintiff and Khurram signing the contract on behalf of SAMA. *Id.* Ravenswood was mentioned in the agreement as a potential "sub-contractor." *Id.*

On January 15, 2022, SAMA sent an invoice to Plaintiff for a total of $1,852,500.00 purportedly for "air transport, housing, medical health policies, training certifications, and unspecified support items" for the Afghan refugees. *Id.* ¶ 18. SAMA represented to Plaintiff that approximately $1,150,000.00 would be subsidized by Ravenswood, and that SAMA would deliver the contracted services within seven days of Plaintiff's final payment of the invoice. *Id.*

Pursuant to the agreement, Plaintiff paid SAMA, Khurram, City Gate, and Ravenswood a total of $590,000.00 in installments between January 18, 2022, and February 14, 2022. *Id.* ¶¶ 20–21. The contracted services were then due within seven days, or no later than February 21, 2022. *Id.* ¶ 21. However, by letter dated February 25, 2022, Gustin wrote to Plaintiff stating Ravenswood was:

> [O]ut of cash – and it is cash that is needed to get the lady to sing. Don't worry, she will sing, (soon) but we need more help as fast as possible. Each of you have promised more funds after success. OK – success is fly and land – but as you can see, we have accomplished so much and the planes are prepared to fetch the [passengers].

ECF Nos. [1] at ¶¶ 22–23; [1-5] at 3. Ultimately, the services were never provided, and Plaintiff paid an additional $145,128.00 to a third party to aid the refugees instead. *Id.* ¶ 24. Plaintiff alleges that Defendants never had any capability or intent to assist the refugees, and instead orchestrated a "classic scam" to defraud Plaintiff and retain its money. *Id.* ¶ 3–4.

On September 19, 2022, Plaintiff filed its Complaint against Defendants Gustin, Ravenswood, Khurram, SAMA, City Gate, and Nelson. ECF No. [1]. The Complaint asserts a total of seven claims for: (1) fraud (Count I); (2) civil conspiracy (Count II); (3) conversion (Count

III); (4) civil theft (Count IV); (5) breach of contract (Count V); (6) unjust enrichment (Count VI); and (7) breach of fiduciary duty (Count VII). *Id.* Counts I–VI are asserted against Defendants Gustin, Ravenswood, Khurram, SAMA, and City Gate. *Id.* Count VII is asserted against Defendant Nelson only. *Id.* As to damages, Plaintiff seeks: (1) "[c]ompensatory damages for injuries suffered by Plaintiff, in an amount . . . not less than $735,128;" (2) "[t]reble damages for injuries suffered by Plaintiff, in an amount . . . not less than an additional $2,205,384;" (3) "[e]xemplary and punitive damages for injuries suffered by Plaintiff"; (4) pre-judgment and post-judgment interest; (5) reasonable attorneys' fees; and (6) "[s]uch other and further relief as the Court deems just and equitable." *Id.* at 13.

Defendant Ravenswood was served with the Summons and Complaint on September 22, 2022. *See* ECF No. [7] (affidavit of service). Ravenswood did not respond to the Complaint. *See* ECF No. [8]. On November 3, 2022, Plaintiff filed a Motion for Entry of Clerk's Default, which the Clerk of Court entered on November 4, 2022. ECF Nos. [8], [9]. On November 16, 2022, the District Court entered an Order on Final Default Judgement Procedure, which required Ravenswood to file a response to the Complaint and a motion to set aside the Clerk's Default by November 30, 2022. ECF No. [11]. Plaintiff properly served the Order on Ravenswood the following day. ECF No. [12] (certificate of service). Ravenswood did not respond.

On December 14, 2022, Plaintiff filed a Notice of Voluntary Dismissal, voluntarily dismissing Defendants Khurram, SAMA, and City Gate from the action. ECF No. [21]. Following the dismissal, the only remaining Defendants are Gustin, Ravenswood, and Nelson. *Id.*

After the Clerk's Default was entered against Ravenswood, Plaintiff filed the instant Motion for Default Final Judgment against Ravenswood only. ECF No. [18]. Therein, Plaintiff seeks default judgment against Ravenswood on Counts I–VI—all counts asserted against

4

Ravenswood in the Complaint. *Id.* Plaintiff argues that it is entitled to default final judgment because it has adequately alleged each claim, properly served Ravenswood with process, and received a Clerk's Default due to Ravenswood's failure to respond to the Complaint. *Id.* In its Motion, Plaintiff seeks the following damages against Ravenswood: (1) "[c]ompensatory damages for injuries suffered by Plaintiff, in an amount not less than $735,128;" (2) "treble damages for injuries suffered by Plaintiff in an amount not less than an additional $2,205,384;" (3) pre-judgment and post-judgment interest; (4) "reasonable attorneys' fees in an amount no less than $224,709.44;" and (5) "[s]uch other and further relief as the Court deems just and equitable." *Id.* at 4.

## II.   ANALYSIS

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment. Subsection (a) provides that the Clerk of Court must enter default when the defendant fails "to plead or otherwise defend." FED. R. CIV. P. 55(a). Upon the entry of a clerk's default, the Court must enter a judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, . . . on the plaintiff's request, with an affidavit showing the amount due . . . ." *Id.* at 55(b)(1). While "[a]ll well-pleaded allegations of fact in the complaint are deemed admitted upon entry of default, [] before entering a default judgment the Court must ensure . . . that the complaint adequately states a claim for which relief may be granted." *United State v. Eye*, No. 10-cv-60739, 2010 WL 11610271, at *2 (S.D. Fla. Aug. 31, 2010) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)). That is, in determining whether default judgment may be entered, courts must review the allegations in the complaint to determine whether there is a "sufficient basis in the pleadings for the particular relief sought." *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1289

(S.D. Fla. 2020) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (noting that the "sufficient basis" standard is akin to the motion to dismiss standard). Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (quotations omitted). Rule 55 does not require an evidentiary hearing on damages where the amount claimed is either liquidated or capable of arithmetic calculation. *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746–47 (11th Cir. 2017) ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages") (quotations omitted); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that under Rule 55, district courts are not required to conduct evidentiary hearings).

### A. Liability

Plaintiff moves for default final judgment against Ravenswood on all claims asserted in the Complaint. ECF No. [18]. Specifically, Plaintiff asserts six claims against Ravenswood: Count I for fraud; Count II for civil conspiracy; Count III for conversion; Count IV for civil theft; Count V for breach of contract; and Count VI for unjust enrichment. *See generally* ECF No. [1]. For the reasons outlined below, the undersigned finds that Plaintiff's Motion should be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Motion should be **GRANTED** as to Counts I–IV and VI, and **DENIED** as to Count V.

#### i. Count I: Fraud

To prevail on a claim of fraudulent misrepresentation under Florida law, a plaintiff must

allege: "(1) a false statement by the defendant concerning a material fact; (2) the defendant's knowledge that the representation was false; (3) that the representation was made by the defendant with the intent to induce another to act on it; and (4) that the plaintiff suffered a consequent injury in reliance on the representation." *Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 920 (11th Cir. 2012) (citing *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)). Plaintiff has met all elements herein.

First, Plaintiff alleges that Ravenswood, through its representatives Gustin and Khurram, made false statements concerning material facts. Specifically, Plaintiff alleges that "Gustin repeatedly told Save Our Allies that he maintained a special relationship with Qatar, including personally with Skeikh Tamim bin Hamad Al Thani – who leads that nation and that, because of this relationship and Khurram's background as a Pakistani-born owner of business in Qatar, Defendants possessed the unique ability to obtain long-term Qatar visas for Afghan refugees." ECF No. [1] ¶ 15. Ravenswood agreed with Plaintiff that it would serve as a subcontractor of SAMA to help Plaintiff "obtain ground and air transportation from Pakistan to Qatar, and housing, employment and other services in Qatar for Afghan refugees," and never did so. *Id.* ¶ 16. Later, Gustin sent Plaintiff a letter on behalf of Ravenswood, stating that "the 'costs' for what we are providing exceeds $10M per planeload," and that Ravenswood was "out of cash," and additional funds were needed because "as you can see, we have accomplished so much and the planes are prepared to fetch the [passengers]," when in reality no progress was made. *Id.* ¶¶ 22–23. Finally, Plaintiff alleges that Defendants, including Ravenswood, made "near-daily assurances of progress purportedly made and anticipated success 'the next day'" when ultimately Ravenswood provided no services and had no intention to do so. *Id.* ¶ 24. These statements were both false and material,

as Plaintiff alleges that the only reason it paid Ravenswood was for the services that it repeatedly promised, but neither provided nor intended to provide.

Second, Plaintiff alleges that Ravenswood knew that the statements were false. Specifically, Plaintiff alleges, "Ravenswood knowingly lacked the capability to assist, and never intended to assist, the Afghan refugees' relocation to Qatar." *Id.* ¶ 25. Third, Plaintiff alleges that the representations were made by Ravenswood with the intent to induce Plaintiff to act on them. As Plaintiff puts it, Ravenswood was knowingly executing a "classic scam" to defraud Plaintiff out of money. *Id.* ¶ 3. By making the representations that it had special relationships in Qatar and was capable of providing assistance, Ravenswood intended to procure payment from Plaintiff without providing any services. *Id.* ¶ 31. Finally, Plaintiff alleges that it suffered a consequent injury in reliance on the representations. Plaintiff alleges that it paid a total of $590,000.00 to Defendants based on the multiple false statements regarding Defendants' intent and ability to provide relocation and other services to refugees. *Id.* Additionally, Plaintiff alleges that it was required to pay an additional $145,128.00 to a third party for the services that Defendants promised and never provided. *Id.* As such, the undersigned finds that Plaintiff has met all elements of Count I and has adequately stated a claim for fraud against Ravenswood.

### ii. Count II: Civil Conspiracy

To prevail on a claim for civil conspiracy under Florida law, a plaintiff must allege: (1) "an agreement between two or more parties"; (2) "to do an unlawful act or to do a lawful act by unlawful means"; (3) "the doing of some overt act in pursuance of the conspiracy"; and (4) "damage to plaintiff as a result of the acts done under the conspiracy." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (citing *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008)). Additionally, the civil conspiracy must

8

have as its object the commission of an underlying tort. *Id.* at 1281. Plaintiff has met all elements herein.

Plaintiff alleges that Ravenswood agreed with Defendant Gustin and former Defendants Khurram, SAMA, and City Gate, to commit the tort of fraudulent misrepresentation against Plaintiff. ECF No. [1] ¶ 34. Plaintiff alleges that Ravenswood, through its representative Gustin, made multiple false misrepresentations to Plaintiff and then accepted payments from Plaintiff although it had no intention to provide any services in return—both overt acts in furtherance of the conspiracy to defraud Plaintiff. *Id.* Finally, Plaintiff alleges that it "lost $590,000 in charitable funds," and "paid third parties an additional $145,128 for services that Defendants had failed to provide," as a result of the conspiracy to defraud Plaintiff. *Id.* As such, the undersigned finds that Plaintiff has met all elements of Count II and has adequately stated a claim for civil conspiracy against Ravenswood.

### iii. Count III: Conversion

To prevail on a claim for conversion under Florida law, a plaintiff must show that "an unauthorized act deprived plaintiff of [its] right to possess a specific and identifiable item." *Pharma Funding, LLC v. FLTX Holdings, LLC*, No. 20-cv-21103, 2021 WL 1166051, at *6 (S.D. Fla. Mar. 8, 2021) (citing *Tambourine Comerico Int'l SA v. Solowsky*, 312 F. App'x 263, 271–72 (11th Cir. 2009), *report and recommendation adopted*, No. 20-cv-21103, 2021 WL 1165420, at *1 (S.D. Fla. Mar. 26, 2021). Courts in this Circuit have found that "a claim is actionable when a party takes money from another, as long as the money is sufficiently identifiable." *Id.* (citing *Rosenthal Toyota, Inc. v. Thorpe*, 824 F.2d 897, 902 (11th Cir. 1987); *Fla. Dep't Ins. v. Debenture Guar.*, 921 F. Supp. 750, 757 (M.D. Fla. 1996)).

9

Herein, Plaintiff alleges that "Defendants' receipt of $590,000 in charitable funds, sent in consideration for services Save Our Allies and the Afghan refugees never received, and subsequent refusal to return the funds to Plaintiff was inconsistent with Plaintiff's ownership interest in those funds." ECF No. [1] ¶ 37. As to Ravenswood specifically, Plaintiff alleges that it transferred a total of $290,000.00 between January 28, 2022, and February 3, 2022, directly to Ravenswood, and Ravenswood failed to provide any services in return or to return the funds. *Id.* ¶¶ 20–21, 37. As such, the undersigned finds that Plaintiff has met all elements of Count III and has adequately stated a claim for conversion against Ravenswood.

### iv. Count IV: Civil Theft

To prevail on a claim for conversion under Florida law, a plaintiff must show that a defendant: "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [a plaintiff's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [the plaintiff] of its right to or a benefit from the property or (b) appropriate the property to [the defendant's] own use or to the use of any person not entitled to the property." *United Techs. Corp.*, 556 F.3d at 1270 (citing FLA. STAT. §§ 772.11, 812.014(1)). Additionally, under the Florida Statute governing civil theft, section 772.11, a plaintiff must make a written demand to the defendant, either in the amount of $200.00 or the treble damage amount, prior to bringing a civil theft claim. FLA. STAT. § 772.11(1).

Plaintiff alleges that Ravenswood knowingly obtained payment from Plaintiff, in the amount of $290,000.00 without ever having "any capability or intent to assist the refugees' escape from Afghanistan." ECF No. [1] ¶¶ 4, 20. Rather, Plaintiff alleges, Ravenswood participated in a "classic scam," to deprive Plaintiff of its funds without providing any services in return— constituting "criminal" or felonious intent. *Id.* ¶¶ 3–4, 25, 40. Finally, Plaintiff attached to the

10

Complaint the written demand letter to Ravenswood, demanding the treble damage amount of the claim at issue. ECF No. [1-6]. As such, the undersigned finds that Plaintiff has met all elements of Count IV and has adequately stated a claim for civil theft against Ravenswood.

### v. Count V: Breach of Contract

To prevail on a breach of contract claim under Florida law, a plaintiff must show: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Hearn v. Int'l Business Machines*, 588 F. App'x 954, 957 (11th Cir. 2014) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)).

Plaintiff has failed to show the existence of a contract as it relates to Ravenswood. In the Complaint, Plaintiff describes Ravenswood as a "subcontractor" of SAMA. ECF No. [1] ¶ 16. In Count V specifically, Plaintiff states that "Save Our Allies and Defendants executed a valid written contract, a copy of which is attached as Exhibit B." *Id.* ¶ 43. The contract filed as Exhibit B, however, is between Plaintiff and SAMA only. ECF No. [1-2]. The only explicit mention of Ravenswood is in Section 7, "Hiring Sub-Contractors," and states "First Party [SAMA] is authorized to hire sub-contractors (for example, The Ravenswood Group, AFG Free or ARC Plan B, etc.) in form of company and / or free lancers [sic.] to fulfill the project, and is also authorized to either transfer or make cash payment to them in advance or as agreed." *Id.* at 4. Because the contract referenced does not include Ravenswood as a party, was not signed by anyone on behalf of Ravenswood, and does not bestow any obligations onto Ravenswood, Plaintiff has failed to show that the contract forming the basis of its claim exists with respect to Ravenswood. As such, the undersigned finds that the Motion should be denied as to Count V.

### vi. Count VI: Unjust Enrichment

To prevail on an unjust enrichment claim under Florida law, a plaintiff must show: "(1) the

plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)). Plaintiff has met all elements on this count.

Plaintiff alleges that it transferred a total of $590,000.00 to Defendants between January 18, 2022, and February 14, 2022. ECF No. [1] ¶ 20. These payments were allotted for both refugee housing, and specifically in relation to Ravenswood, for flights. *Id.* Plaintiff alleges that "[m]oney was paid directly to Ravenswood after Gustin told [Plaintiff] that he could move money overseas more quickly to Khurram." *Id.* Specifically, Plaintiff alleges that it executed three transfers to Ravenswood: one on January 28, 2022 for $90,000.00, one on January 28, 2022 for $100,000.00, and one on February 3, 2022 for $100,000.00. *Id.* Thus, Plaintiff has established that it conferred a benefit on Ravenswood in the total amount of $290,000.00. Plaintiff alleges that Ravenswood "accepted the payment" and that it "failed to provide any services for the benefit conferred," such that it would be inequitable for Ravenswood to retain the benefit without paying the value thereof. *Id.* ¶¶ 45–46. As such, the undersigned finds that Plaintiff has met all elements of Count VI and has adequately stated a claim for unjust enrichment against Ravenswood.

### B. Damages

Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co.*, 777 F.2d at 1544 (quotations omitted). Rule 55 does not require an evidentiary hearing on damages where the amount claimed is either liquidated or capable of arithmetic calculation. *Safari Programs, Inc.*, 686 F. App'x at 746–47

("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages") (quotations omitted); *Tara Productions, Inc.*, 449 F. App'x at 911–12 (noting that under Rule 55, district courts are not required to conduct evidentiary hearings). Given the undersigned's recommendation above, Plaintiff is entitled to damages on Counts I–IV and VI.

Plaintiff seeks four categories of damages herein: (1) compensatory damages of $735,128.00; (2) treble damages of $2,205,384.00; (3) pre-judgment interest and post-judgment interest; and (4) "reasonable attorneys' fees" of $224,709.44. ECF No. [18] at 4. In support of these damages, Plaintiff submitted the Declaration of its board member Nick Palmisciano, ECF No. [18-1].

As to compensatory damages, Plaintiff seeks a total of $735,128.00 from Ravenswood. This number is comprised of $590,000.00 paid by Plaintiff to Defendants in multiple wire transfers, as well as $145,128.00 paid by Plaintiff to third-party the United Afghan American Coalition, for the services that should have been provided by Defendants. ECF No. [18-1] at 3. In his Declaration, Mr. Palmisciano states that Plaintiff paid Ravenswood via wire transfers $90,000.00 on January 28, 2022, an additional $100,000.00 on January 28, 2022, and $100,000.00 on February 3, 2022—totaling $290,000.00. ECF No. [18-1] at 2. As further support for these transactions, Mr. Palmisciano points to Exhibit D of the Complaint, which contains details of each wire transfer, including the wire numbers, transfer start dates, amounts, reference numbers, "IMAD", "OMAD", beneficiary account numbers, beneficiary names, and beneficiary addresses. ECF No. [1-4] at 2. This chart reflects three transfers from Plaintiff to Ravenswood, consistent with the information in the Declaration of Mr. Palmisciano. *Id.* Additionally, both the chart and Mr. Palmisciano's declaration reflect a total of $590,000.00 transferred to all Defendants. *Id.*;

ECF No. [18-1] at 2. In Mr. Palmisciano's declaration, he states that "[a]ll of the payments made by [Plaintiff], including the payments to City Gate and Khurram, were made at the direction of defendant and Ravenswood CEO Gregory Gustin." *Id.* at 2. As to the additional $145,128.00 paid by Plaintiff to third-party the United Afghan American Coalition, the Declaration of Mr. Palmisciano supports that amount, and the invoices in fact exceed the amount sought. *Id.* at 3; ECF No. [18-3] at 9–14.

Given the support provided for compensatory damages, the undersigned finds that as to Count I for fraud and Count II for civil conspiracy, Plaintiff has adequately shown that it suffered damages in the amount of $735,128.00 due to the actions of Ravenswood. However, as to Count III for conversion, Count IV for civil theft, and Count VI for unjust enrichment, the undersigned finds that Plaintiff has shown only $290,000.00 in compensatory damages due to the actions of Ravenswood. Specifically, while Ravenswood's conduct may have resulted in a total of $735,128.00 in damages, Plaintiff has only provided evidence that Ravenswood actually *received* and retained $290,000.00 of that amount.

Next, as to Count IV only, Plaintiff seeks treble damages of $2,205,384.00, pursuant to section 772.11 of the Florida Statutes, governing civil theft. ECF No. [18] at 2–3. Section 772.11 provides for treble damages in the case of civil theft. FLA. STAT. § 772.11; *see also Becil v. Bank of Am., N.A.*, No. 10-cv-20377, 2010 WL 3943001, at *3 (S.D. Fla. Oct. 5, 2010) (citing *Rosenthal Toyota, Inc.*, 824 F.2d at 902). Plaintiff's calculation, however, is flawed based on the amount of compensatory damages it has proven for Count IV. Because Plaintiff has made a showing of only $290,000.00 in compensatory damages against Ravenswood on Count IV, the treble damage amount is $870,000.00.

14

Additionally, Plaintiff seeks pre- and post-judgment interest. Plaintiff presents no argument regarding entitlement or amount to either form of interest in its Motion. Accordingly, the undersigned recommends that Plaintiff's request for pre- and post-judgment interest be **DENIED WITHOUT PREJUDICE**. Plaintiff should be permitted to submit supporting evidence and argument as to its request for interest on its judgment.

Finally, Plaintiff seeks reasonable attorneys' fees and costs in an amount of $224,709.44. In this respect, Plaintiff's Motion is severely deficient. Plaintiff presents no argument as to entitlement to attorneys' fees, reasonableness of hourly rates, or reasonableness in the amount of hours expended on this matter. Further, the Declaration of Mr. Palmisciano does not address the topic of attorneys' fees and Plaintiff has submitted no timesheets to support its request. Thus, the undersigned recommends that the Plaintiff's request for attorneys' fees and costs be **DENIED WITHOUT PREJUDICE**. Plaintiff should be permitted to submit supporting evidence and argument as to its reasonable fees and costs.

### III. RECOMMENDATION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion for Default Final Judgment Against Defendant The Ravenswood Group Holding LLC, ECF No. [18], be **GRANTED IN PART AND DENIED IN PART**, as follows:

1. As to Counts I and II, default judgment should be **GRANTED** against Ravenswood. Plaintiff should be awarded $735,128.00 in compensatory damages as to Counts I and II.

2. As to Counts III and VI, default judgment should be **GRANTED** against Ravenswood. Plaintiff should be awarded $290,000.00 in compensatory damages as to Counts III and VI.

3.   As to Count IV, default judgment should be **GRANTED** against Ravenswood. Plaintiff should be awarded $870,000.00 in treble damages as to Count IV.

4.   As to Count V, the Motion should be **DENIED**.

5.   As to Plaintiff's request for pre-judgment interest, post-judgment interest, and attorneys' fees and costs, the Motion should be **DENIED WITHOUT PREJUDICE**. Plaintiff should be permitted to submit supporting evidence and argument as to its pre-judgment interest, post-judgment interest, and reasonable attorneys' fees and costs.

## IV.   OBJECTIONS

A party shall serve and file written objections, if any, to this report and Recommendation with the District Court within **SEVEN (7) DAYS** of being served with a copy of this Report and Recommendation. The undersigned has shortened the objection period because Defendant Ravenswood has not made any appearance in this lawsuit. Failure to timely file objections will bar a de novo determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.' 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on August 14, 2023.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**